IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM HALFSTEP DINSMORE, | ) | Civil Action No. 2:16-00752 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| COUNTY OF BUTLER, et al., | ) | ECF No. 33 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

This is a civil rights action under 42 U.S.C. § 1983 filed by Adam Halfstep Dinsmore ("Plaintiff") regarding medical treatment he received while he was a pretrial detainee at the Butler County Prison. Named as defendants are the County of Butler; Richard T. Shaffer, individually and in his former capacity as the Warden of the Butler County Prison; Mike Bartlett, individually and in his official capacity as a Corrections Officer for the Butler County Prison; Corey Helfrich,[2] individually and in his official capacity as a Corrections Officer for the Butler County Prison; Desmond Foringer, individually and in his official capacity as a Corrections Officer for the Butler County Prison (collectively, the "Corrections Officer Defendants"); Wexford Health Sources, Inc.; Becky Watterson, individually and in her official capacity as a nurse for Wexford Health Sources, Inc. and Butler County Prison; and Maureen Scott, individually and in her official capacity as a nurse for Wexford Health Sources, Inc. and Butler County Prison (collectively, the "Wexford Health Defendants"). Pending before the Court is a

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 35, 36.

[2] The complaint incorrectly identifies this defendant as "Cory Helfrick," instead of Corey Helfrich. The Court will employ the correct spelling herein.

1

motion to dismiss filed by Shaffer[3] and the Corrections Officer Defendants (ECF No. 33). For the following reasons, the motion will be granted.

I. **BACKGROUND**

At the time of the events alleged in the complaint, Plaintiff was a pretrial detainee at the Butler County Prison. Am. Compl. ¶ 18. He is no longer in custody. Id. ¶ 19. On June 3, 2014, "Plaintiff began experiencing acute symptoms of a severe and life-threatening illness, including but not limited to: right-sided chest pains; fever; chills; cough productive of white sputum . . . ; shortness of breath; wheezing; significant weight loss; and diaphoretic spells (sweating heavily)." Id. ¶ 20. "Following administration of various antibiotics by Prison medical staff, Plaintiff's symptoms worsened." Id. ¶ 21. He alleges that, "[f]rom the onset of [his] symptoms . . . [he] was in obvious need of diagnostic testing and medical treatment, which," he claims, "could have only been provided by an outside hospital." Id. ¶ 22. He claims that, on unspecified dates, he "made numerous requests to be taken to a hospital for diagnostic testing[,]" id. ¶ 23, though he does not specify to whom those requests were made.

On July 6, 2014, Plaintiff submitted an "Inmate Request Form," in which he wrote:

> Ever since my return from Armstrong County, I have been sick and in pain. I have requested to be taken to the hospital to have specific tests done. I have been denied. I do not feel I have been receiving competent or adequate treatment and [do not] feel my condition has been completely diagnosed and handled. Could you please come talk to me about this matter.

Id. ¶ 24. After Plaintiff submitted the request form, "[t]he prison staff spoke to the medical staff and Plaintiff was advised to submit a Sick Call Slip." Id. ¶ 25. The next day, Scott administered additional antibiotics to Plaintiff, and he again requested to be taken to a hospital. Id. However, "[a]ll of [his] requests to be taken to the hospital were denied and/or ignored." Id. ¶ 28.

---

[3] Plaintiff concedes that the claim against Shaffer should be dismissed. ECF No. 38 at 3.

On July 10, 2014, Plaintiff was transferred to the Indiana County Jail related to a matter pending in that county. Once there, he repeated his medical complaints and received medication. Id. ¶ 29. On July 14, 2014, Plaintiff was transferred from the Indiana County Jail to Indiana Regional Medical Center. Id. ¶ 31. Due to the severity of his condition, he was eventually transported to UPMC Mercy, where he was placed in intensive care. Id. ¶ 35. A CT scan showed the he had "a buildup of fluid between the tissues that line the lungs and the chest" and "a complete or partial collapse of a lung or a section/lobe of a lung," as well as "a complex lesion upon the dome of the liver." Id. ¶ 36. He spent nearly two weeks in the hospital. Id. ¶ 36.

Plaintiff initiated this action by filing a complaint on June 6, 2016, against Shaffer, the Corrections Officer Defendants, Wexford Health, Watterson, and Jane Doe 1, alleging claims for deliberate indifference against all defendants and negligence against Wexford Health, Watterson, and Jane Doe 1. ECF No. 1. Butler County, Shaffer, and the Corrections Officer Defendants filed an answer on August 5, 2016, and the Wexford Health Defendants filed an Answer on October 12, 2016. ECF Nos. 13, 19. On December 7, 2016, Plaintiff filed a motion for leave to file an amended complaint, so that he could name Scott as a defendant in place of "Jane Doe 1." ECF No. 28. The Court granted his motion, ECF No. 29, and the amended complaint was filed on December 14, 2016, ECF No. 30. The Wexford Health Defendants filed an answer on December 21, 2016. ECF No. 31. Butler County filed an answer one week later. ECF No. 32. That same day, Shaffer and the Corrections Officer Defendants filed a motion to dismiss, along with a brief in support. ECF Nos. 33-34. Plaintiff filed a response and brief in opposition on January 18, 2017. ECF No. 37-38. The Correction Officer Defendants filed a reply. ECF No. 42. Having been fully briefed, the motion is ripe for disposition.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. See Fowler, 578 F.3d at 211.

## III. DISCUSSION

Plaintiff alleges that the Corrections Officer Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.[4] The Corrections Officer Defendants move to dismiss the claims against them, arguing that there is no evidence of deliberate indifference on their part because, as non-medical officials, they were entitled to defer to the judgment of the prison's medical personnel who were treating Plaintiff.

To state a claim for deliberate indifference, a plaintiff must satisfy the two-part test drawn from Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "First, plaintiff must make an 'objective' showing that the deprivation was

---

[4] Since Plaintiff was a pretrial detainee, his claim must be premised on the Fourteenth Amendment because "his Eighth Amendment protection from cruel and unusual punishment [had] not yet attached." Vargo ex rel. Vargo v. Plum Borough, 376 F. App'x 212, 215 (3d Cir. 2010) (citing Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988)). Nevertheless, the Supreme Court has instructed that "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner[.]'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir.2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). Thus, his claim will be evaluated under the familiar Eighth Amendment standard. King v. Cnty. of Gloucester, 302 F. App'x 92, 97 (3d Cir. 2008).

4

'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind'" – i.e., "deliberate indifference" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Atkinson v. Taylor, 316 F.3d 257, 272–73 (3d Cir. 2003). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). "In addition, where denial or delay causes an inmate to suffer a lifelong handicap or permanent loss, the medical need is considered serious." Id. In this case, there is no dispute that Plaintiff's medical condition was serious. Thus, the Court must focus on the deliberate indifference requirement.

To demonstrate deliberate indifference, the plaintiff "must make a subjective showing that defendant acted with a sufficiently culpable state of mind." Pinchak, 294 F.3d at 499. The level of culpability is "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Thomas v. Dragovich, 142 F. App'x 33, 36 (3d Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)). A prison official must "know of an excessive risk to an inmate's health or safety and affirmatively disregard it." Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009) (citing Farmer, 511 U.S. at 835-38). The Third Circuit Court of Appeals has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner

from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted). Conversely, "[m]ere medical malpractice cannot give rise to a violation of the Eighth Amendment." White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990). As our Court of Appeals long ago explained, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979).

Moreover, "[i]f a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)). "This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on." Id. Thus, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. At the same time, even when an inmate is under the care of prison medical staff, his condition might be "so dire and obvious that [a non-medical prison official's] failure to summon immediate medical attention . . . amount[s] to deliberate indifference." Id. at 237. As one district court has explained:

> if the prisoner's skin appears blue or he appears short of breath for no apparent reason, or his appearance otherwise suggests to a layperson that the prisoner may need medical attention, guards cannot simply leave the prisoner to his possible fate on the theory that he has been receiving regular medical care and is "in capable hands." The judgment of the medical personnel necessarily is based on the information available to them when they last saw the prisoner and/or last reviewed his file. It is generally absurd for guards to assume that medical staff are aware of the prisoner's condition at the current moment: how would a doctor or

6

nurse who examined a prisoner even an hour ago know that at this minute, without his presence, the prisoner appears to be experiencing signs/symptoms of a medical problem?

Roberts v. Hacken-Joe, No. 1:08-CV-458, 2009 WL 2356262, at *4 (W.D. Mich. July 29, 2009).

The complaint states that Plaintiff was given "various antibiotics by Prison medical staff," so it is clear that he was receiving some medical attention during his detention at the prison. Therefore, under Spruill, non-medical personnel such as the Corrections Officers Defendants generally cannot be said to be deliberately indifferent. Nevertheless, Plaintiff attempts to bring his claim with the "exception" identified in Spruill, arguing that his "worsening condition . . . should have been easily discernable to a lay person" and, in turn, caused the Corrections Officer Defendants to alert the medical staff. ECF No. 38 at 9.

As it currently stands, however, the complaint does not contain sufficient facts to state a claim under the Spruill exception. Although Plaintiff alleges that his "symptoms worsened," such that he "was in obvious need of diagnostic testing and medical treatment," he does not allege any facts to support these assertions with respect to the Corrections Officer Defendants. More specifically, he has not plead which of the Corrections Officer Defendants (if any) encountered him when he was in dire straits, when such an encounter took place (if, in fact, it did), and how his need for immediate care was so obvious that the Corrections Officer Defendants should have "summoned immediate medical attention." Spruill, 372 F.3d at 237. He has not claimed, for example, that any of the Corrections Officer Defendants encountered him in an obvious state of duress (e.g., blue in the face, difficulty breathing, etc.) while making their rounds, yet failed to take any action. Likewise, although Plaintiff alleges that he "made numerous requests to be taken to a hospital," he does not specify whether those requests were made to any of the Corrections Officer Defendants. Even if they were, such requests, in and of themselves, would not be enough

7

to impose liability on these Defendants, absent some indication that Plaintiff's condition was "so dire and obvious" when the requests were made that the Defendants should have immediately sought medical assistance.

## IV. **CONCLUSION**

For the foregoing reasons, the Corrections Officer Defendants' motion to dismiss (ECF Nos. 33) will be granted. Consistent with Plaintiff's concession, the claim against Shaffer will be dismissed with prejudice, and he will be dismissed from this action. However, Plaintiff will be afforded leave to file an amended complaint with respect to the Corrections Officer Defendants, in which he may attempt to address the deficiencies the Court just identified. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."). While the Third Circuit has created a high bar when it comes to imposing liability for non-medical personnel when a detainee is under the care of a prison's medical staff, Plaintiff may be able to overcome that bar to the extent that he is able to plead that he was in dire need of medical attention yet the Corrections Officer Defendants ignored his condition. To do so, however, he will have to be far more specific regarding who among the Corrections Officers Defendants (if any of them) encountered him and why his appearance should have suggested that he was in immediate need of care.

A separate Order will issue.

Dated: January 31, 2017

Lisa Pupo Lenihan
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM HALFSTEP DINSMORE, | ) Civil Action No. 2:16-00752 |
| Plaintiff, | ) |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| v. | ) |
| COUNTY OF BUTLER, et al., | ) ECF No. 33 |
| Defendants. | ) |

## ORDER

**AND NOW**, this 31st day of January, 2017,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by Richard T. Shaffer, individually and in his former capacity as the Warden of the Butler County Prison; Mike Bartlett, individually and in his official capacity as a Corrections Officer for the Butler County Prison; Corey Helfrich, individually and in his official capacity as a Corrections Officer for the Butler County Prison; Desmond Foringer, individually and in his official capacity as a Corrections Officer for the Butler County Prison (ECF No. 33) is **GRANTED**. The claim against Shaffer is **DISMISSED WITH PREJUDICE**, while the claims against the Corrections Officer Defendants are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff may file a second amended complaint on or before March 1, 2017. Failure to file a second amended complaint by that date will result in the dismissal of the claims against the Correction Officer Defendants with prejudice.

By the Court:

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge